```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                      EASTERN DIVISION
```

United States of America

    v.                          Case No. 2:15-cr-97

Roman Hernandez

OPINION AND ORDER

    Defendant Roman Hernandez has been charged by superseding indictment in this case with drug conspiracy, weapons and money laundering offenses.  On June 27, 2016, defendant filed a motion to suppress evidence obtained through the execution of a search warrant at 3260 Norwood Street, Columbus, Ohio, on April 9, 2013, and any evidence and statements derived from the stop of his vehicle soon after he was observed driving away from that residence just prior to the commencement of the search.  The government opposed the motion with a memorandum which included supporting exhibits.  On August 15, 2016, this court presided over an evidentiary hearing at which the government presented testimony.  The matter is now before the court for a ruling on the motion.

I. Background

    The course of the investigation is detailed in the affidavit supporting the search warrant issued by a municipal court judge in Franklin County, Ohio, on April 9, 2013, at 2:28 PM.  The affiant, Detective David A. Lawrence, stated:

> Detectives and agents along with a cooperating individual set up a heroin buy for twenty ounces from a known suspect with a known telephone number.
>
> Detectives were able to apply for a received a warrant for a ping on this known telephone number.

On Monday, 04/08/13, at approximately 3:00 PM, Detective David A. Lawrence #1260 drove by 3260 Norwood Street to try and locate a suspect whose phone had a ping on. Detective David A. Lawrence #1260 drove by 3260 Norwood Street and saw Oscar Alberto Ruiz (AKA Adalberto Romaro-Perez) standing in the backyard with several other unidentified males. Detective David A. Lawrence #1260 drove past 3260 Norwood Street and stopped his car to check the location of the ping. The ping was still giving a location of 3260 Norwood Street; within 8 meters.

On Tuesday, 04/09/13, at approximately 9:15 AM, Detective David A. Lawrence #1260 again checked the ping on the same phone and it showed a location of 2272 Morning View Lane. This location is near the intersection of Roberts Road and Rome-Hilliard Road. The ping was within 8 meters.

On 04/09/13, at approximately 9:20 AM, HSI Special Agent James Ratterman #4158 drove through the parking lot on the southeast corner of Roberts Road and Rome-Hilliard Road and observed Oscar Alberto Ruiz sitting in the passenger seat of a white car, Ohio tag #FRD1437. Oscar Alberto Ruiz is known by HSI Special Agent James Ratterman #4158 on site [sic] because of an interdiction involving Heroin from one (1) week ago. Oscar Alberto Ruiz is the person who owns the phone that the ping is on. HSI Special Agent James Ratterman #4158 contacted Detective David A. Lawrence #1260 and Franklin County Sheriff[']s Deputy Robert McKee #81 to assist. Oscar Alberto Ruiz and another male Hispanic, later identified as Vicente Israel Garcia-Arreguin, were ordered out of the car.

Franklin County Sheriff[']s Deputy Robert McKee #81 ran his K-9 "Blek" around the car and the K-9 gave a positive alert for drugs within the car. A subsequent search of the car revealed over 500 grams of Heroin. These two (2) suspects were arrested for possession of Heroin. They had cooperated with Detectives and pointed out 3260 Norwood Street and 3238 Norwood Street as being locations where they obtain their Heroin.

The Columbus Division of Police Narcotics Bureau's experience in executing search warrants on locations where illegal contraband is sold has established that the

2

> illegal sales are completed with more than one person present on the premises and that drugs, drug monies, or other contraband unknown at this time may be concealed or transferred to any person inside the residence prior to the police entering. For this reason, the affiant requests authorization to search any person or persons in the residence or curtilage for contraband and/or drug monies.

Doc. 20, Ex. 2. The search warrant inventory sheet bears the date of April 9, 2013, at 3:00 PM. The inventory indicates that currency was found in the attic, a bedroom and a hall closet. A loaded firearm was found in a kitchen drawer, and another loaded firearm was found in the master bedroom. Military body armor was found in the attic and in a bedroom, and a plastic bag with sixty-eight pills was found in a bedroom. PAGEID 93-94.

Detective Lawrence testified concerning the above events contained in his affidavit supporting the search warrant for 3260 Norwood. Detective Lawrence also obtained a warrant to search the premises at 3238 Norwood, the residence of Austin Seitz. Doc. 20, Ex. 3. He stated that he followed the "pinging" on Ruiz's cell phone and observed him at 3260 Norwood Avenue. Either later that day or the next day, he provided the address to other detectives involved in the investigation. Agent Clark reported that 3260 Norwood was the address of Erica Starkey, defendant's girlfriend, and that defendant had been arrested for gun and drug offenses. Detective Lawrence testified that after the stop on Rome-Hilliard Road, Garcia, Ruiz's driver, accompanied officers and directed them to 3238 Norwood and 3260 Norwood as being locations where they obtained drugs. Garcia informed them that a 16-year-old living at 3238 Norwood stored the drugs in his garage, and that the 16-year-old worked with a person at 3260 Norwood, where the agents would

probably find money and guns.

Columbus Police Officer Brent Planck testified that on April 9, 2013, he was in an unmarked vehicle engaged in surveillance on Norwood, awaiting the search warrants. At approximately 2:50 PM, he was instructed to follow the defendant as he left the residence at 3260 Norwood driving a white Cadillac Escalade. Another driver in a green Mercedes left the residence at the same time and proceeded along with the Escalade. Officer Planck stopped the Mercedes and spoke with the driver. Officer Planck observed a bag containing currency in plain view on the console. The driver stated that the approximately $18,000 in the bag was from the defendant as payment for a vehicle. Defendant's vehicle was pulled over by Franklin County Sheriff's Deputy Bob McKee at a location approximately four-and-a-half miles away from the Norwood address.

Deputy McKee, a K-9 officer, testified that he was asked by officers executing the search warrants on Norwood to make a traffic stop of the white Cadillac Escalade and to watch the driver while they were executing the warrants. They provided the license number of defendant's car. Prior to the stop, he observed the vehicle speeding through a school zone. Deputy McKee turned on his beacon lights, but the vehicle did not stop immediately. Deputy McKee's report (PAGEID 116) indicates that the stop occurred at 3:01 PM. He asked defendant, the driver of the Escalade, to exit the vehicle. Deputy McKee did not have his gun drawn, and he denied snatching defendant from the vehicle, handcuffing him, or holding him on the ground with his foot. Deputy McKee permitted his K-9 to sweep the vehicle, and the dog alerted to the vehicle at the driver's side. PAGEID 116. Defendant had $2,700 in cash on his

4

person, but no drugs or guns were found. Defendant's vehicle was impounded at 3:40 PM. PAGEID 117. Deputy McKee's interaction with the defendant ended when Task Force Agents James Ratterman and Lisa Brown arrived at the scene.

Agent Brown testified that she arrived at the scene of the stop of the Escalade and observed defendant and Deputy McKee standing at the back of the cruiser. Agents Brown and Ratterman participated in the interview process. Defendant was not handcuffed during the interview or at any time that she could see. The interview took place outside the vehicle. Defendant was advised that he was not under arrest and that he could go at any time. He was also advised of his Miranda rights and he signed a written waiver form at 3:08 PM. PAGEID 118. Defendant spoke clear English and did not indicate that there was any language barrier.

Defendant was cooperative, and stated that he was involved in narcotics trafficking. He stated that they would find personal pills, cash from the sale of heroin, and two firearms at 3260 Norwood. Defendant told the agents that he had recently received a kilogram of heroin from a man known to him as Romero, Jr., and that he had put down $30,000 as a partial payment for the kilogram. Defendant stated that the heroin was fairly pure, and that he would "step on it" (extend it with an additive). Defendant identified a Sheriff's Office photograph of Romero (aka Ruiz) as being his supplier, and stated that Romero had just been at the residence on Norwood, and that he let Romero and his friends stay with him on Norwood. Defendant stated that he wanted to continue to cooperate with the agents, and they discussed using him as a confidential informant. The warrant was executed as the agents were talking

5

with defendant, and the agents contacted the executing agents to verify what items were been found during the search to gauge whether defendant was being genuinely cooperative. The interview concluded at 3:45 PM. Defendant was not arrested that day and was permitted to leave.

II. Search of 3260 Norwood

The basis for defendant's motion to suppress the search of 3260 Norwood is not entirely clear. Defendant moves to suppress any evidence taken from his residence as being the fruit of his statements made following the investigatory stop. Doc. 20, p. 2. However, the search of his residence pursuant to a warrant was underway at the time of the stop. There is no evidence that the search of defendant's residence was aided in any way by evidence obtained during the investigatory stop. In any event, the government cannot rely on evidence obtained during the stop to establish probable cause to search the residence. In reviewing the sufficiency of the evidence supporting probable cause, this court is limited to examining the information contained within the four corners of the affidavit. United States v. Dyer, 580 F.3d 386, 390 (6th Cir. 2009).

Insofar as defendant's motion can be read as attacking the sufficiency of the affidavit, the court notes that a search warrant affidavit must indicate "a fair probability that evidence of a crime will be located on the premises of the proposed search." United States v. Jenkins, 396 F.3d 751, 760 (6th Cir. 2005)(internal citations and quotation marks omitted). "In other words, a magistrate need only find 'reasonable grounds for belief'

6

that evidence will be found in order to justify the issuance of a search warrant." United States v. Thomas, 605 F.3d 300, 307 (6th Cir. 2010)(quoting United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990)).

"Search warrant affidavits are to be judged on the totality of the circumstances, not line-by-line scrutiny." Thomas, 605 F.3d at 307 (citing Illinois v. Gates, 462 U.S. 213, 239 (1983).  "The affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added."  United States v. Allen, 211 F.3d 970, 975 (6th Cir. 2000)(en banc).  "Although sloppiness [in drafting the affidavit] may raise flags, it is not in any way fatal because search warrant affidavits 'are normally drafted by nonlawyers in the midst and haste of a criminal investigation.'" United States v. Brooks, 594 F.3d 488, 490 (6th Cir. 2010)(quoting United States v. Ventresca, 380 U.S. 102, 108 (1965)).  To determine if probable cause exists, the issuing judge must undertake a "practical, common sense" evaluation of "all of the circumstances set forth in the affidavit before him."  Gates, 462 U.S. at 238.  The findings of the state court judge who issued the search warrant are entitled to great deference, and should be overturned only if they are found to be arbitrary.  Thomas, 605 F.3d at 307.

Defendant notes that the officers had not personally observed drugs or guns at 3260 Norwood.  However, an officer "may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." United States v. Williams, 544 F.3d 683, 690 (6th Cir.

7

2008)(quoting Jones v. United States, 362 U.S. 257, 269-70 (1960)). The statements of an informant who is known to the officer, and who would therefore be subject to prosecution for making a false report, are "entitled to far greater weight than those of an anonymous source." United States v. May, 399 F.3d 817, 824-25 (6th Cir. 2005). Further, where the informant is actually named in the affidavit, such an informant "require[s] little corroboration." Williams, 544 F.3d at 690.

Here, Garcia was named in the affidavit, and would be subject to prosecution for making a false report. Considering that he was named in the affidavit as being with Ruiz on the morning of April 9, 2013, in a vehicle which contained over 500 grams of heroin, his statements identifying the locations where he and Ruiz obtained their heroin were also statements against his interest, another indicia of reliability. Garcia's identification of 3260 Norwood was also corroborated by the information that Detective Lawrence, tracing the ping on Ruiz's phone, observed Ruiz in the back yard of 3260 Norwood along with other males on the afternoon of April 8, 2013.

According to Detective Lawrence's testimony, Garcia stated that the heroin was stored at 3238 Norwood, and that money and guns would be found at 3260 Norwood. From this, defendant argues that the statement identifying 3260 as being one of the "locations where they obtain their Heroin" was false and that the affidavit failed to establish probable cause that drugs would be found at that location. "Warrant affidavits carry with them 'a presumption of validity.' and 'the challenger's attack must be more than conclusory' and must allege 'deliberate falsity or reckless

8

disregard [on the part] of the affiant, not of any nongovernmental informant." United States v. Stuart, 507 F.3d 391, 396 (6th Cir. 2007)(quoting Franks v. Delaware, 438 U.S. 154, 171 (1978)). The burden is on the defendant to show such falsehoods in the affidavit. Franks, 438 U.S. at 171.

Garcia's statement that 3238 Norwood was used as the storage facility for the heroin does not establish that the statement about obtaining drugs from someone at 3260 Norwood was false. Detective Lawrence testified that Garcia stated there was a 16-year-old at 3238 Norwood who "worked with 3260[.]" Detective Lawrence also testified that Garcia stated that "you will probably only find money and guns" at 3260 Norwood. However, he also testified that Garcia pointed to both locations as being where they obtained heroin, and that Garcia did not say that no drugs would be found at 3260 Norwood. From Garcia's information and his own observation of Ruiz at 3260 Norwood, Detective Lawrence could reasonably conclude that although the teenager at 3238 Norwood provided a separate storage facility to keep the drugs hidden, drugs could be obtained at 3260 Norwood because someone there negotiated the sales of heroin and delivered it to purchasers. This conclusion is buttressed by the fact that Garcia stated that guns and money would be found at 3260 Norwood. The evidence is insufficient to establish that Detective Lawrence knowingly and intentionally included a false statement in the affidavit or that he did so with reckless disregard for the truth, as required under Franks.

Similarly, the fact that IRS Agent Bernard Clark testified that Garcia and Ruiz made no statements during their later debriefing in state court proceedings about obtaining drugs from

9

defendant does not establish that Garcia's earlier statements to Detective Lawrence were false. There is no evidence that Garcia denied obtaining drugs from defendant in his state court interview. Even if Garcia had recanted his previous identification of 3260 Norwood as being a location where he obtained drugs in his state court interview, this would not prove that Detective Lawrence had any reason to know that Garcia's statements to him were false, or that he acted recklessly or deliberately with regard to the truth of the statements in the affidavit.

The court concludes that the search warrant affidavit is sufficient to establish probable cause that drugs and evidence of drug-dealing would be found at 3260 Norwood. However, even assuming that the affidavit was insufficient to establish probable cause, the seized evidence is admissible under the good faith exception pursuant to United States v. Leon, 468 U.S. 897 (1984). The Fourth Amendment exclusionary rule does not apply in cases where law enforcement officers acted in good faith and reasonably relied on a search warrant that is ultimately found invalid. Thomas, 605 F.3d at 311. The issue is "whether a reasonably trained police officer would have known that the search was illegal despite the [issuing judge's] authorization." Leon, 468 U.S. at 923 n. 32. An officer's reliance on a subsequently invalidated warrant is not objectively reasonable: (1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief

10

in its existence is objectively unreasonable; and (4) when the warrant is so facially deficient that it cannot be reasonably presumed to be valid. Thomas, 605 F.3d at 311. Here, the law enforcement officers acted in good faith and reasonably relied on the search warrant, and none of the exceptions to Leon apply in this case. The motion to suppress the search of 3260 Norwood is not well taken.

III. Validity of the Vehicle Stop

Defendant challenges the legality of the stop of his vehicle. The government relies on United States v. Cochran, 939 F.2d 337 (6th Cir. 1991), which upheld the stop of the defendant's vehicle a short distance away from his residence as being authorized in conjunction with the search of his residence pursuant to a search warrant. The Sixth Circuit's holding was based on Michigan v. Summers, 452 U.S. 692 (1981), where the Supreme Court upheld the detention of a defendant who was stopped leaving his residence just prior to the execution of the search warrant as being justified to prevent the flight of the defendant, to minimize the risk of harm to the officers, and to facilitate the orderly completion of the search. However, in Bailey v. United States, ___ U.S. ___, 133 S.Ct. 1031, 1042 (2013), the Supreme Court limited the scope of Summers to the detention of persons within the immediate vicinity of the premises to be searched. The Court noted that "[i]f officers elect to defer the detention until the suspect or departing occupant leaves the immediate vicinity, the lawfulness of detention is controlled by other standards, including, of course, a brief stop for questioning based on reasonable suspicion under

Terry or an arrest based on probable cause." Id. Thus, the court must determine if the stop of defendant's vehicle was justified under some other theory.

In order to conduct a traffic stop, an officer must possess either probable cause or reasonable suspicion of criminal activity. United States v. Lyons, 687 F.3d 754, 763 (6th Cir. 2012). Probable cause exists when there is a "fair probability that contraband or evidence of a crime will be found in a particular place." Smith v. Thornburg, 136 F.3d 1070, 1074 (6th Cir. 1998). Reasonable suspicion for an investigatory stop under Terry v. Ohio, 392 U.S. 1 (1968) is

> more than a mere hunch, but is satisfied by a likelihood of criminal activity less than probable cause, and falls considerably short of satisfying a preponderance of the evidence standard. If an officer possesses a particularized and objective basis for suspecting the particular person of criminal activity based on specific and articulable facts, he may conduct a Terry stop.

Dorsey v. Barber, 517 F.3d 389, 395 (6th Cir. 2008)(quoting Smoak v. Hall, 460 F.3d 768, 778-79 (6th Cir. 2006)). In determining whether reasonable suspicion exists, the court considers the totality of the circumstances, considering all of the information available to law enforcement officials at the time. Lyons, 687 F.3d at 763. The degree of a traffic stop's intrusion must be reasonably related in scope to the situation at hand, as judged by examining the reasonableness of the officer's conduct given his suspicions and the surrounding circumstances. United States v. Davis, 430 F.3d 345, 353-54 (6th Cir. 2005). Reasonable suspicion may ripen into probable cause based upon the officer's interactions with the car's occupants. Lyons, 687 F.3d at 764.

In this case, the initial stop of defendant's vehicle by

12

Deputy McKee was not based on any observations by him which would lead him to believe that defendant was engaged in drug activities. However, an officer may conduct a stop based on information obtained by fellow officers. United States v. Barnes, 910 F.2d 1342, 1344 (6th Cir. 1990)(citing United States v. Hensley, 469 U.S. 221, 229 (1985)). The "collective knowledge" rule recognizes that "effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another." Hensley, 469 U.S. at 231. Under this doctrine, collective knowledge is imputed "among multiple law enforcement agencies, even when the evidence demonstrates that the responding officer was wholly unaware of the specific facts that established reasonable suspicion for the stop." Lyons, 687 F.3d at 766 (citing Hensley, 469 U.S. at 231). The collective knowledge doctrine may apply whenever a responding officer executes a stop at the request of an officer who possesses the facts necessary to establish reasonable suspicion. Id.

In Lyons, the Sixth Circuit upheld the validity of the stop of defendant's vehicle by state troopers where a DEA agent informed troopers that there was an ongoing DEA investigation and asked them to make the stop. The court held that the DEA investigators had sufficient information to support a reasonable suspicion of criminal activity, and that, under the collective knowledge doctrine, the troopers' stop was valid even though they had no independent basis to target defendant's vehicle and did so based solely on the DEA's request and representation that the vehicle was "part of 'an ongoing investigation' by the DEA." Lyons, 687 F.3d at 764-769.

Here, in addition to the information in the search warrant affidavit identifying 3260 Norwood as a location for heroin trafficking, the investigating agents knew that this location was the residence of defendant's girlfriend, and that defendant had a prior record of arrests for drug and gun offenses. According to Detective Lawrence's testimony, prior to the execution of the warrant, surveillance officers observed a man arrive at 3260 Norwood in a green Mercedes, and saw a kid coming from 3238 Norwood, where heroin was stored, and going into 3260 Norwood. Agents also observed defendant drive away from the residence along with the green Mercedes shortly before the execution of the search warrant. The agents had sufficient information to support a finding of at least a reasonable suspicion that defendant was engaging in narcotics activities. Deputy McKee testified that he was asked to make an investigative stop of the Cadillac Escalade and to watch the person while the search warrant was being executed. He also stated that he is part of the Task Force, and that he acted on the agents' instructions. Under the collective knowledge doctrine, the information known to the Task Force agents can be imputed to him, and the stop was supported by reasonable suspicion. In addition, Deputy McKee stated that defendant did not stop immediately after Deputy McKee activated his beacon lights, a fact which also contributed to reasonable suspicion.

Deputy McKee also had another valid basis for making the stop. Before Deputy McKee stopped defendant's vehicle, he observed defendant driving over the speed limit in a school zone. The court notes that the stop occurred on April 9, 2013, a Tuesday, at approximately 3:01 PM, which would have been a time where the

14

school zone speed limit would be in effect.  After witnessing this violation, Deputy McKee had probable cause to make a traffic stop. So long as an officer has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment.  Davis, 430 F.3d at 352.

Deputy McKee testified that he would not ordinarily have written a citation for this violation, and that his intent was to make an investigatory stop.  However, the Supreme Court has held that as long as law enforcement officers have probable cause to believe that a traffic violation has occurred, the resulting stop is lawful and does not violate the Fourth Amendment irrespective of the subjective motive of the officers.  Whren v. United States, 517 U.S. 806, 813-15 (1996).  In other words, a traffic stop is reasonable if there was probable cause for the traffic stop, and it is irrelevant what else the officer intended to investigate at the time of the stop. Id.; United States v. Wellman, 185 F.3d 651, 655 (6th Cir. 1999)(even if the officer making a traffic stop is motivated by a suspicion that defendant fits into a "drug courier profile," the traffic stop is not unreasonable if probable cause for a traffic violation exists); see also Bazzi v. City of Dearborn, 658 F.3d 598, 604 (6th Cir. 2011)(a traffic violation provides probable cause to justify a stop even if the officer's real purpose was a hope that narcotics or other contraband would be found as a result of the stop); United States v. Hughes, 606 F.3d 311, 315 n. 7 (6th Cir. 2010)("[I]t is possible for there to be probable cause for a stop even where the facts that give rise to that probable cause (such as a violation of traffic laws) play no

role in an officer's decision to make the stop."). This rule applies even if the traffic violation is not an arrestable offense. United States v. Jackson, 682 F.3d 448, 453 (6th Cir. 2012). The stop here was valid because it was supported by probable cause that defendant had committed a traffic offense, regardless of the fact that Deputy McKee had another purpose in making the stop.

The next inquiry is whether defendant was illegally detained beyond the scope of the investigatory stop. Following the initial stop, the subsequent detention cannot be excessively intrusive and must be reasonably related in time to the investigation. Wellman, 185 F.3d at 656. The court must determine whether the officer's actions were reasonably related in scope to the circumstances which justified the interference in the first place. Id. It was within the scope of the stop for Deputy McKee to determine whether defendant was engaged in drug activities, and whether he was interfering with the execution of the search warrant taking place at his residence by leaving the house with drugs or drug money. The record indicates that soon after stopping the defendant at 3:01 PM and asking him to exit the vehicle, Deputy McKee, used his K-9 to sweep the vehicle, and the K-9 alerted to the driver side door. An alert by a reliable drug-detection dog is sufficient to establish probable cause for the presence of controlled substances.[1] United States v. Stubblefield, 682 F.3d 502, 507 (6th Cir. 2012). This provided additional grounds for further

---

[1] At the suppression hearing, defendant did not raise the issue of the training or reliability of the K-9. The record includes at least one instance, the April 9th stop of Ruiz, where Deputy McKee's K-9 alerted to a vehicle and heroin was found in the car. The court anticipates that additional evidence concerning the K-9's training will be introduced at trial.

investigation.

Agents Brown and Ratterman arrived within minutes. Although defendant was informed that he was free to leave, he signed a rights waiver at 3:08 PM and consented to talk with the agents. At that point, the defendant's continued presence was voluntary. There is no evidence that defendant was physically abused or threatened in any way. The interview, which took place outside at the rear of defendant's vehicle, concluded at 3:45 PM. The court finds that the investigative stop was valid, and that defendant's detention was not excessively intrusive and was reasonably related in time to the investigation. Defendant's statements to the agents are not inadmissible as the fruits of an illegal stop.

The testimony did not disclose that any evidence was found in defendant's car. Deputy McKee testified that defendant had $2,700 on his person. However, the evidence does not reveal when this money was found, or whether the money was discovered during the search or patdown of defendant's person or was voluntarily disclosed by defendant. Defendant had the opportunity at the hearing to argue specifically how his motion to suppress applied to the money on his person and to examine witnesses on that point, but failed to do so. At this point, the court has no information indicating that this money came to the attention of law enforcement officials illegally, and the motion to suppress insofar as it may apply to this evidence is denied.

IV. Admissibility of Defendant's Statements

Defendant claims that the statements he made during the stop were involuntary. A statement made in response to custodial police interrogation must be suppressed unless the suspect first waived

17

his Miranda rights voluntarily, knowingly and intelligently. United States v. Ray, 803 F.3d 244, 266 (6th Cir. 2015).

    The court finds that defendant was not in custody when he made the statements. See United States v. Swanson, 341 F.3d 524, 528-29 (6th Cir. 2003)(directing courts to look to the totality of the circumstances to determine how a reasonable person in the suspect's position would have understood the situation, and whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest). Defendant was told that he was free to leave, the questioning took place on a public street, and defendant was not handcuffed or confined in any way. See id. at 529-30. However, the court also notes that regardless of whether the defendant was in custody, he did not dispute that he was advised of his Miranda rights at the scene and signed a written waiver.

    The government bears the burden of proving by a preponderance of the evidence that Miranda rights were voluntarily and knowingly waived. United States v. Binford, 818 F.3d 261, 273 (6th Cir. 2016). "An incriminating statement is deemed to have been coerced 'when the conduct of the law enforcement officials is such as to overbear the accused's will to resist." United States v. Fowler, 535 F.3d 408, 416 (6th Cir. 2008)(quoting United States v. Haynes, 301 F.3d 669, 684 (6th Cir. 2002)). An involuntary confession may result from physical or psychological coercion by law enforcement officials. Ledbetter v. Edwards, 35 F.3d 1062, 1067 (6th Cir. 1994). Factors to consider include the defendant's age, education and intelligence, whether the defendant has been informed of his constitution rights, the length of the questioning, and the use of

18

physical force or punishment. Id. at 416-17. Courts also consider whether the defendant has had prior experience with the criminal justice system. Binford, 818 F.3d at 273. In order to find that a confession was involuntary due to police coercion, it must be shown that: 1) the police activity was objectively coercive; 2) the coercion was sufficient to overbear the defendant's will; and 3) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement. Ray, 803 F.3d at 266.

The evidence in this case showed that when Deputy McKee asked defendant to step out of the vehicle, he did not draw his gun. Contrary to defendant's allegations, there is no evidence that defendant was thrown to the ground or physically assaulted in any way. There is no evidence that defendant was handcuffed during the stop, or that the police activity was objectively coercive. The rights waiver was signed at 3:08 PM, minutes after the initial stop at 3:01 PM. Doc. 21,Ex. 6. Before questioning, defendant was advised that he was free to leave, and he was not arrested that day. Defendant was thirty-six years old, and indicated on the waiver form that he completed high school and college. The record also indicates that defendant had multiple prior contacts with the criminal justice system. Doc. 21, Ex. 7. The interview was not lengthy, and concluded at 3:45 PM. The interview occurred outside defendant's vehicle. There is no evidence that any officer made threats about prosecuting defendant's pregnant girlfriend. Defendant was cooperative and indicated that he was interested in working with the agents as an informant.

The court finds that the government has met its burden of

proving that defendant knowingly, intelligently and voluntarily waived his Miranda rights, and that his statement was not involuntary or coerced. Defendant's motion to suppress statements is denied.

V. Conclusion

In accordance with the foregoing, defendant's motion to suppress evidence and statements (Doc. 20) is denied.

Date: September 27, 2016        s/James L. Graham
                                James L. Graham
                                United States District Judge